IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

YULANDA ANN DAVIS                                                                              PLAINTIFF

vs.                                         Civil No. 6:06-cv-06072

MICHAEL J. ASTRUE[1]                                                                          DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Yulanda Ann Davis ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  (Doc. No. 7).[2]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff's application for SSI now before this Court was protectively filed on August 24, 1998.  (Tr. 81-83).  This application alleges an onset date of June 1, 1996.  (Tr. 82).  In this

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for this case are referenced by the designation "Tr."

1

application and in other documents filed with the SSA, Plaintiff does not clearly allege which mental or physical impairments cause her to be disabled. (Tr. 81-83). However, at the administrative hearing on February 22, 2006, Plaintiff specifically stated that her claimed impairments included headaches; leg, knee, mental, and menstrual problems; and lower back pain. (Tr. 315-318).

Plaintiff's SSI application was initially denied on March 29, 1999 and was denied again on reconsideration on May 19, 1999. (Tr. 67-70). Plaintiff requested an administrative hearing which was held on February 15, 2000 in Hot Springs, Arkansas. (Tr. 35-66). On May 23, 2000, the ALJ entered an unfavorable decision, concluded Plaintiff was not disabled under the Act, and denied Plaintiff's request for SSI. (Tr. 11-23). On August 2, 2001, the Appeals Council denied Plaintiff's request for review of this unfavorable decision. (Tr. 5-7). Subsequently, Plaintiff appealed this unfavorable decision to this Court. (Tr. 229-238). On January 10, 2003, the Honorable Judge Bobby E. Shepherd entered an order reversing and remanding Plaintiff's case to the ALJ, finding that the ALJ erred both by determining that Plaintiff could perform unskilled, heavy work and by failing to consider testimony from a vocational expert regarding Plaintiff's borderline intellectual functioning. (Tr. 229-238).

Following this remand, a second administrative hearing was held on November 5, 2003 in Hot Springs, Arkansas. (Tr. 241-267). On February 19, 2004, the ALJ entered a second unfavorable decision denying Plaintiff's request for SSI. (Tr. 209-221). Thereafter, Plaintiff appealed this second unfavorable decision to this Court. (Tr. 291-296). On September 29, 2005, the Honorable Judge Beverly Stites Jones entered an order reversing and remanding Plaintiff's case to the ALJ for a second time, finding that the ALJ erred by failing to question the vocational expert regarding Plaintiff's borderline intellectual functioning. (Tr. 295-296). In this opinion, Judge Jones also noted

that, on remand, the ALJ should reevaluate his finding that Plaintiff can perform the full range of medium work.  (Tr. 296).

Thereafter, a third administrative hearing was held on February 22, 2006 in Hot Springs, Arkansas.  (Tr. 311-335).  Plaintiff was present and was represented by an attorney, James Street, at this hearing.  *See id.*  Plaintiff, Alice Davis (Plaintiff's grandmother), and Vocational Expert ("VE") William Elmore testified at this hearing.  *See id.*  At the time of this hearing, Plaintiff was twenty-six (26) years old, which is classified as a "younger individual" under 20 C.F.R. § 404.1563(c) (2007), and had completed the tenth grade of school.  (Tr. 283, Findings 6-7, 315, 320-321).  At the time of this hearing, Plaintiff was also five (5) foot, six (6) inches tall and weighed approximately two hundred and ninety (290) pounds.  (Tr. 315).

On April 24, 2006, the ALJ entered a third unfavorable decision denying Plaintiff's request for SSI.[3]  (Tr. 275-284).  In this opinion, the ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") at any time relevant to his decision.  (Tr. 280, Finding 1).  The ALJ determined Plaintiff suffered from the following severe impairments: obesity, leg pain, and borderline intellectual functioning.  (Tr. 280, Finding 2).  The ALJ determined that, although severe, these impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925, and 416.926) ("Listings").  (Tr. 280-281, Finding 3).

The ALJ also evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC").  (Tr. 281-283, Finding 4).  First, the ALJ evaluated Plaintiff's

---

[3] The ALJ's April 24, 2006 opinion is the only opinion that will be reviewed and analyzed in this current Memorandum Opinion.

subjective complaints and determined that Plaintiff's testimony was not fully credible. *See id.* The ALJ based this credibility determination largely upon the fact that Plaintiff was able to "use public transportation, play video games, and assist [in] caring for her mother in a wheelchair." (Tr. 282). Second, the ALJ determined Plaintiff's RFC and concluded that Plaintiff could perform the full range of light work with some restrictions. (Tr. 281-283, Finding 4). Specifically, the ALJ determined Plaintiff retained the ability to perform the following:

> To lift/carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8 hour day; and stand/walk 6 hours in an 8 hour day. . . . occasionally squat, stoop, and crouch. . . . has borderline intellectual functioning (BIF) and is able to engage in work activities where interpersonal contact is incidental to the work performed; and the complexity of tasks is learned and performed by rote with few variables and requiring little judgment.

*See id.*

The ALJ also determined that Plaintiff could not perform her Past Relevant Work ("PRW") because she had no PRW. (Tr. 283, Finding 5). The ALJ, however, determined that Plaintiff would be able to perform work that exists in significant numbers in the national economy. (Tr. 283, Finding 9). The VE testified at the hearing regarding this issue. (Tr. 332-335). The VE testified that a hypothetical person the same age as Plaintiff and with the same RFC and education could perform work as a production assembler, which is light, unskilled work. (Tr. 333). The VE further testified that there are over 6,500 such jobs in the State of Arkansas and just over 171,000 such jobs in the nation. (Tr. 333). Based upon the VE's testimony, the ALJ determined that Plaintiff was not disabled. (Tr. 283-284, Findings 9-10).

On October 13, 2006, the Appeals Council declined to review the ALJ's April 24, 2006 hearing decision. (Tr. 270-272). Subsequently, Plaintiff filed the present action. (Doc. No. 1). This case was referred to the undersigned on February 20, 2007. Plaintiff and Defendant have both filed

4

appeal briefs. (Doc. Nos. 8-9). This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive

5

months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the ALJ erred by improperly (A) determining Plaintiff did not meet the requirements of Listings 1.02 and 12.05; (B) evaluating Plaintiff's RFC; and (C) assessing Plaintiff's credibility.[4] (Doc. No. 8, Pages 5-19). In response, Defendant argues that Plaintiff did not meet her burden of establishing she met the requirements of Listings 1.02 and 12.05 during the relevant time period. *See id.* at 4-5. Defendant also argues that the ALJ properly determined Plaintiff's RFC, based the relevant medical evidence included in the record. *See id.* at

---

[4]Plaintiff also makes some allegations regarding the ALJ's reliance on the VE's testimony. (Doc. No. 8, Page 14-16). Because this Court finds the ALJ erred in his RFC and credibility determinations, and the VE's testimony was based upon the ALJ's RFC and credibility determinations, this Court also necessarily finds the ALJ's improperly relied on the VE's testimony. *See* Discussion 3.B-3.C, *infra*.

6

6-7. Defendant argues that none of the medical records included in the transcript support greater restrictions than those assessed by the ALJ. *See id.* Finally, Defendant argues that the ALJ properly evaluated and discounted Plaintiff's subjective complaints pursuant to the directives of *Polaski*. *See id.* at 8-9.

Based upon the reasons set forth in this Memorandum Opinion, this Court finds Plaintiff's second and third arguments are merited and finds that this case must be reversed and remanded. Because the ALJ erred in both his RFC and credibility determinations, this Court will primarily focus on those determinations. However, because Plaintiff's application for SSI has been pending for nearly a decade, and in order to further instruct the ALJ and avoid the possibility of a fourth remand, this Court will address all of Plaintiff's points of error.

**A. Listings 1.02 (Major Joint Dysfunction) and 12.05 (Mental Retardation)**

In her appeal brief, Plaintiff claims she suffers from the following impairments: (1) mild mental retardation with an IQ of 70 or lower (WAIS-III), (2) chronic knee pain, (3) morbid obesity, (4) chronic back and leg pain, (5) chest pain, (6) headaches, (7) chronic upper respiratory infection, and (8) unstable gait. (Doc. No. 8, Page 6). Plaintiff claims these impairments meet the requirements of the Listings. *See id.* Plaintiff does not, however, provide any briefing supporting her claim that her impairments meet the requirements of the Listings and does not include in her briefing which Listings she claims to meet. *See id.* at 5-9.

In the Eighth Circuit, a court is not required to review a plaintiff's claim that he or she meets the requirements of the Listings when that plaintiff simply makes a conclusory assertion that he or she meets those requirements. *See Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005). Instead, in order for the court to review such a claim, a plaintiff must provide both law and facts supporting the claim that he or she meets the requirements of the Listings. *See id.* (noting "[w]e

7

reject out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides *no analysis of the relevant law or facts regarding these listings*") (emphasis added). Thus, because Plaintiff has provided no briefing regarding these Listings, this Court is not even required to review Plaintiff's claim that she meets the requirements of the Listings.

However, even if Plaintiff had provided some evidence and law in support for her claim that she meets the requirements of the Listings, Plaintiff still would not be disabled at Step 3. Specifically, the only Listings raised by Plaintiff's claimed impairments are Listings 1.02 and 12.05, and those were the only Listings addressed by the ALJ.[5] (Tr. 280-281). Listing 1.02 relates to a major joint dysfunction and requires "*gross anatomical deformity* (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)." In her appeal brief and in other documents filed with the Court, Plaintiff only complains of *different types of pain:* chronic knee, leg, and back pain. (Doc. No. 8, Page 6). Plaintiff does not claim, in any of her briefing, that she suffers from any gross anatomical deformity. *See id.* Furthermore, in order to meet the requirements of Listing 1.02, Plaintiff has to establish that she is unable to "ambulate effectively" or that she is unable to "perform fine and gross movements effectively." Plaintiff has not provided this Court with any evidence indicating that she is unable to perform either of these functions. Therefore, based upon the current record, Plaintiff cannot meet the requirements of Listing 1.02.

The ALJ also properly determined that Plaintiff cannot meet the requirements of Listing 12.05 (Mental Retardation). For an individual to qualify under Listing 12.05, that individual must

---

[5] The ALJ also addressed Listing 1.05 in his opinion. (Tr. 281). Listing 1.05, however, relates to amputated limbs. Plaintiff is clearly not claiming she meets the requirements of Listing 1.05 in this case. Thus, this Court will not address Listing 1.05.

meet the requirements of either 12.05A, 12.05B, 12.05C, or 12.05D. Although Plaintiff does not indicate to this Court which part of Listing 12.05 she claims to meet, the only two possibilities, based upon the facts in this case, are 12.05C and 12.05D. First, to meet the requirements of Listing 12.05C, a plaintiff must establish that he or she has "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and *significant work-related limitation of function*." (emphasis added). As Plaintiff noted in her appeal brief, Dr. Ray Nelson examined Plaintiff on March 1, 1999 and determined Plaintiff "functions both intellectually and adaptively in the mildly retarded to borderline range" and that Plaintiff has an IQ of "70 or lower." (Tr. 144, 146). Therefore, assuming Dr. Nelson's diagnosis is accurate, Plaintiff can establish that she has an IQ score somewhere between 60 and 70. Plaintiff has not, however, indicated to this Court what other physical or mental impairment may impose any additional or significant work-related limitations of function. Without such a claim or such proof, this Court cannot find that Plaintiff meets the requirements of Listing 12.05C.

Second, Plaintiff cannot meet the requirements of 12.05D. In order to establish that he or she meets the requirements of 12.05D, a plaintiff must establish "a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least *two* of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation . . ." Even assuming Dr. Nelson's assessment of Plaintiff's IQ is accurate, Plaintiff has not established or provided this Court with any evidence indicating she has met any of these four factors; and based upon this Court's review of the record in this case, Plaintiff's medical records indicate that she cannot meet the requisite factors. (Tr. 142-146). At best, Plaintiff can only meet the first factor by

possibly establishing that she has a marked restriction in activities of daily living. Plaintiff cannot, however, establish that she has a marked difficulty in maintaining social function. Dr. Nelson reported that, even though she may not prefer such interaction, Plaintiff can appropriately interact with other individuals. (Tr. 145) (stating, "Ms. Davis reports that she gets along good with her mother. She doesn't get along with her brother. She doesn't like her teachers. She doesn't like being around a whole lot of people.") Plaintiff's records also indicate that, on March 22, 1999, an administrator at Plaintiff's high school stated that while in high school, Plaintiff "demonstrated an ability to relate well with her peers and staff." (Tr. 108).

Plaintiff also cannot establish that she has a marked difficulty in maintaining concentration, persistence, and pace. (Tr. 146). Dr. Nelson stated that Plaintiff had no limitations in this area "except as a function of her intellectual level" and that "she can concentrate at a level that would allow her to follow simple directions." (Tr. 146). Furthermore, there is no evidence in the record indicating that Plaintiff has suffered from repeated episodes of decompensation as a result of her impairments. Without such evidence, Plaintiff cannot establish she meets the requirements of Listing 12.05D. Thus, the ALJ did not err in determining that Plaintiff did not meet the requirements of Listing 12.05D.

### B. ALJ's RFC Determination

Plaintiff also claims the ALJ's findings concerning Plaintiff's RFC to perform light work are not supported by substantial evidence.[6] (Doc. No. 8, Pages 6-16). Plaintiff claims the ALJ drew his own conclusions regarding Plaintiff's RFC and improperly ignored the evidence that

---

[6] Plaintiff claims repeatedly in her brief that the ALJ erred in determining Plaintiff could perform *heavy unskilled work*. (Doc. No. 8, Page 13). This is a misstatement. The ALJ determined Plaintiff retained the RFC to perform *light work*. (Tr. Tr 281, Finding 4).

contradicted his conclusions. *See id.* at 9-10. Plaintiff also claims that, in evaluating Plaintiff's RFC, the ALJ erred in failing to properly consider her mental limitations, obesity, chronic pain, and other nonexertional limitations. *See id.* Plaintiff argues that medical records from Dr. George Fotio (Tr. 147-159) and Dr. Leo Sousan (Tr. 109-110) support her claim that she is unable to perform light work. Defendant argues that this Court should not review Plaintiff's RFC claim because Plaintiff has failed to develop her argument by citing to case law or to any specific evidence in the record to support her claim. (Doc. No. 9, Page 6). Defendant also argues that the ALJ's RFC determination is supported by substantial evidence in the record. (Doc. No. 9, Pages 6-7). Defendant argues that the ALJ properly considered "the combination of Plaintiff's obesity, leg pain, and borderline intellectual functioning in his decision" and that Plaintiff has pointed to no specific report which would support greater restrictions than those the ALJ assessed. *See id.*

This Court finds that the ALJ erred in his RFC determination and that this determination is not supported by substantial evidence in the record for the following two reasons: (1) the ALJ improperly determined that Plaintiff can "occasionally squat, stoop, and crouch" and (2) the ALJ improperly relied upon nearly seven-year-old medical records in making his RFC determination.

### (1) Plaintiff's Ability to Occasionally Squat

In the present action, the ALJ determined Plaintiff retained the RFC to perform a wide range of light work. (Tr. 281, Finding 4). As a part of this finding, the ALJ determined that Plaintiff retained the ability to "occasionally squat, stoop, and crouch." *See id.* Plaintiff's medical records, however, from Dr. George J. Fotioo, who conducted a consultative general physical on March 15, 1999, state that Plaintiff is *unable* to squat and arise from a squatting position because she is "too heavy." (Tr. 152). None of Plaintiff's other medical records indicate that Plaintiff is able to

occasionally squat, stoop, and crouch. (Tr. 109-202).

An ALJ's RFC determination must be based upon at least *some* medical evidence. *See Cox v. Astrue,* No. 06-3540, 2007 WL 2127352, at *5 (8th Cir. 2007). If the ALJ's RFC determination is not supported by at least some medical evidence, then the ALJ's RFC determination cannot be found to be supported by substantial evidence. *See Frankl v. Shalala,* 47 F.3d 935, 939 (8th Cir. 1995). In the present action, the ALJ's determination–that Plaintiff can "occasionally squat, stoop, and crouch"–is not supported by *any* medical evidence in the record. In fact, the medical records from Dr. Fotioo contradict this finding and indicate, instead, that Plaintiff is completely unable to squat and arise from a squatting position. Therefore, the ALJ's RFC determination is not supported by substantial evidence. *See Frankl,* 47 F.3d at 939.

### (2) Plaintiff's Seven-Year-Old Medical Records

The ALJ erred by solely relying upon Plaintiff's seven-year-old medical records in making his RFC determination. (Tr. 109-202). In the present action, Plaintiff's medical records only dated from 1996 to 1999. *See id.* The ALJ's administrative hearing was held on February 22, 2006, which is nearly seven years after the date of Plaintiff's last medical records. Despite this seven-year gap, the ALJ based both his RFC and credibility determination (see below) solely on these early medical records. This was in error. While the ALJ should consider a plaintiff's early medical records, the ALJ is also required to consider more current medical records. *See Frankl,* 47 F.3d 935 at 939 (reversing and remanding the ALJ's disability determination where the ALJ relied primarily upon medical progress notes that were dated September of 1990, over a year before the Plaintiff's administrative hearing). Furthermore, it is the ALJ's duty to fully and fairly develop the record and to obtain the evidence that is necessary to determine a claimant's RFC. *See Coleman v. Astrue,* No.

06-3434, 2007 WL 2323943, at *4 (8th Cir. August 16, 2007). Because the ALJ did not fully and fairly develop the record in this case and because the ALJ failed to obtain and consider more current medical records in his RFC determination, this Court finds ALJ's RFC determination is not supported by substantial evidence and cannot be affirmed. *See id.*

### C. ALJ's Credibility Determination

Plaintiff also claims the ALJ erred in his credibility determination. (Doc. No. 8, Pages 16-20). Specifically, Plaintiff claims the ALJ erred by failing to make specific findings as to the relevant evidence considered in deciding to discredit Plaintiff's testimony. *See id.* Plaintiff claims the ALJ merely decided, without any reasoning or explanation, to disbelieve Plaintiff's subjective complaints. *See id.* In response, Defendant argues that the ALJ properly evaluated and discredited Plaintiff's subjective complaints pursuant to the directives of *Polaski*. (Doc. No. 9, Pages 7-9). Defendant argues that the ALJ relied upon Plaintiff's varied daily activities and on her medical records in deciding to discount Plaintiff's subjective complaints. *See id.* Defendant argues that no doctor had placed any restrictions on Plaintiff's ability to work and that this lack of restrictions is inconsistent with a claim of disability. *See id.*

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.429. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). These factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The ALJ is not required to

methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.  *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).  Furthermore, an ALJ's credibility determination is generally entitled to deference.  *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007).  As long as the ALJ properly applies these five factors and gives several valid reasons for his or her finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference.  *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).  The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors.  *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998).  The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ discounted Plaintiff's subjective complaints based upon several findings: (1) Plaintiff was able to use public transportation, play video games, and assist in caring for her mother in a wheelchair; (2) Plaintiff was able to be enrolled in regular classes from the seventh to the eleventh grade; (3) Plaintiff's consultative examination, dated March 15, 1999, indicated that Plaintiff has a normal range of motion in the cervical and lumbar spine along the extremities;(4) Plaintiff's medical records, dated from 1996-1999, indicated that she has never had

14

any restrictions on her ability to work; and (5) Plaintiff's X-Rays, dated in September of 1996, indicated that there are no abnormalities with Plaintiff's knees or feet. (Tr. 262-263). While the two findings are valid, the other three findings are based upon medical records dated *nearly seven years* prior to the date of hearing, and, as the Eighth Circuit has previously held, cannot be solely used to support an RFC or a credibility determination. *See Frankl,* 47 F.3d at 939.

      Furthermore, the ALJ's *Polaski* analysis is also inadequate. In his opinion, the ALJ merely cited the *Polaski* factors and the facts from Plaintiff's case but never described any inconsistencies between Plaintiff's claimed limitations and the record. (Tr. 282-283). The ALJ is required to list these inconsistencies in his or her *Polaski* analysis. *See Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004) (stating, "he [the ALJ] must give reasons for discrediting the claimant") (internal quotes omitted). For instance, at one point in his opinion, instead of explaining how claimant's medication either detracted or bolstered Plaintiff's subjective complaints, the ALJ stated the following: "Medication reportedly used by the claimant includes Atenolol (25 mg.); Hydrocodone APAP (1 every 4-6 hours as needed); and Yasmin (1 daily). Non-prescription medication includes Tylenol (6-8 daily) and Tylenol PM (2 at bedtime)." (Tr. 282). The ALJ provided no analysis of Plaintiff's medication and how that medication may indicate that Plaintiff's subjective complaints were not fully credible. *See id.* In performing a *Polaski* analysis, the ALJ is required not only to *list* the factors but must also analyze those factors in light of the record and state inconsistencies between a claimant's subjective complaints and the record. *See Strongson,* 361 at 1072. Here, the ALJ stated no such inconsistencies and provided no such analysis. (Tr. 282-283). Thus, the ALJ's *Polaski* analysis is also inadequate.

      Accordingly, this case must be reversed and remanded. On remand, the ALJ should further

15

develop the record and obtain current medical information and order new consultative examinations of Plaintiff's mental and physical limitations in order to more fully assess Plaintiff's RFC. Plaintiff's application for benefits was filed nearly a decade ago, and it is unfortunate that Plaintiff has not been given a certain decision as to whether benefits will be granted or denied. In this remand, it is incumbent upon the ALJ to fully and adequately develop the record such that Plaintiff's application may be fully resolved without any further delay. Had Plaintiff more fully supported her claim for disability and had the record been more fully developed, this Court would be in the position to either affirm or remand with directions to award Plaintiff benefits. However, because the record is so incomplete and undeveloped, this Court is unable to make that determination at this time and must reverse and remand with directions to the ALJ to more fully develop the record. Furthermore, on remand, if additional evidence is presented, the ALJ should consider whether to reevaluate Plaintiff's ability to meet the requirements of the Listings.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **24th** day of September, 2007.

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge